UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BLAYNE E. FIELDS,                )
                                 )
         Petitioner,             )    Case No. 1:05-cv-353
                                 )
v.                               )    Honorable Paul L. Maloney
                                 )
DANIEL QUIGLEY,                  )
                                 )    **OPINION**
         Respondent.             )
_____  )

       This is a habeas corpus action brought *pro se* by a state prisoner under 28 U.S.C. § 2254. Petitioner filed his habeas application on May 19, 2005, and the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA) applies to his action. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). Petitioner is serving a term of incarceration of 34 months to 28 years, imposed by the trial court on December 18, 2002, after Petitioner was convicted of violating his probation. In his *pro se* petition, Petitioner raises three grounds for relief, as follows:

       I.    The amended order of probation was void because it was granted ex parte.

       II.   The amended order of probation was not entered until after Petitioner was charged with violating his probation.

       III.  Counsel rendered ineffective assistance, which caused Petitioner to enter a guilty plea to the charge of probation violation.

Respondent has filed an answer to the petition. (docket #8). Upon review and applying the AEDPA standards, the court finds that none of Petitioner's claims is meritorious. Accordingly, the petition will be denied.

## Procedural History

Petitioner was originally charged with uttering and publishing, larceny in a building, and being a fourth habitual offender. On May 22, 2002, pursuant to a plea bargain, Petitioner pleaded no contest in the Muskegon County Circuit Court to the charge of uttering and publishing and guilty to the charge of being a third habitual offender. (05/22/02 Plea Transcript (Plea Tr.), App. A, 11, docket #20). On July 29, 2002, the trial court sentenced Petitioner to nine months confinement in the Muskegon County Jail with work release, and four years of probation. (07/29/02 Sentencing Transcript (Sent. Tr.), App. B, 7, docket #20). The sentence was imposed pursuant to a pre-plea meeting with the trial court under *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993)[1], at which the trial court agreed to sentence Petitioner to incarceration in the Muskegon County Jail in addition to any terms and conditions of probation. (05/22/02 Plea Tr., 5; 07/29/02 Sent. Tr, 6).

On September 11, 2002, the trial judge issued a Bed Allocation Release Order, directing that Petitioner be released from the county jail and assigned to the Touchstone Residential Half-Way House and thereafter, home tether. (docket #20, App. D). On the same date, a probation officer submitted a form Petition and Order for Amendment of Order of Probation. The petition sought the following amendment: "[y]ou must attend, participate in, and complete the following

---

[1] In *Cobbs*, the Michigan Supreme Court held that trial judges may participate in the plea negotiation process by indicating the length of sentence that the judge, on the basis of a preliminary evaluation of the case, believes is appropriate for the charged offense. *Cobbs*, 505 N.W.2d at 212. The tentative sentence is not binding on the court at the time of sentencing, but the defendant has an absolute right to withdraw his plea if the court imposes a more severe sentence.

program[s]: Touchstone." On September 12, 2002, the trial judge signed the form order, which provided in full: "IT IS ORDERED that the probation of the above Defendant be amended as set forth in the petition. All other conditions not inconsistent with this order shall remain in effect." (Response to Petition for Writ of Habeas Corpus, Ex. 3, docket #8 ). Petitioner also signed the form order, indicating that he had "received a copy of this order of amendment and agrees to comply with this order." (*Id.*). He did not date his signature. The order was not docketed until October 9, 2002.

On October 4, 2002, the trial court issued a petition and bench warrant charging Petitioner with violating the September 12, 2002 order by refusing to produce a urine sample as required by the Touchstone treatment program. (docket #20, App. E). On December 4, 2002, Petitioner pleaded guilty to the charge of violating his probation. (12/04/02 Plea Tr., App. G., docket #20). Before accepting the plea, the trial court questioned Petitioner as follows:

> Court: And I believe that on or about September 12th, 2002, you and I signed an amended order of probation which contains a Probation Order 3.1, is that right?
>
> Petitioner: Yes.
>
> Court: And you received a copy of that amended order?
>
> Petitioner: Yes.
>
> Court: And Probation Order 3.1 required you to attend, participate in, and complete the Touchstone Residential Program, is that correct?
>
> Petitioner: Yes.

(12/04/02 Plea Tr., 10). On December 18, 2002, Petitioner was sentenced to a term of incarceration of 34 months to 28 years. (12/18/02 Sent. Tr., App. H, docket #20). He is currently serving this sentence at the Earnest C. Brooks Correctional Facility.

Petitioner filed a motion in the trial court to withdraw his guilty plea to the probation violation, raising the same grounds that he raises in the instant petition. (Mot. to Withdraw Plea to Parole Violation, App. J, docket #20). On February 26, 2004, the trial court denied the motion. (Response to Pet. for Writ of Habeas Corpus, Ex. 4, docket #8). The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for lack of merit in the grounds presented. (*See People v. Fields*, No. 254502, Mich. Ct. App., June 22, 2004, docket #19). The Michigan Supreme Court denied Petitioner's application for leave to appeal on March 29, 2005, because the Supreme Court was not persuaded that the questions presented should be reviewed by the Court. (*See People v. Fields*, No. 126833, Mich., Mar. 29, 2005, docket #20).

## Discussion

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied sub nom.*, *Texas v. Penry*, 547 U.S. 1200 (2006); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d). *De novo* review is restricted to instances where the state court did not address the

merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

"It is important to note, however, that 'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005)(quoting *Williams*, 529 U.S. at 409). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *see Walls v. Kontech*, 490 F.3d 432, 436 (6th Cir. 2007); *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410; *see Bell v. Cone*, 535 U.S. at 694; *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006)("The proper inquiry under the 'unreasonable application' analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect."), *cert. denied sub. nom. Keith v. Houck*, 127 S. Ct. 1881 (2007).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008). This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves

establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003)(quoting *Williams*, 529 U.S. at 412); *see Fautenberry v. Mitchell*, 515 F.3d 614, 623 (6th Cir. 2008). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004)(describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry"). "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne v. Bell*, 418 F.3d 644, 656 (6th Cir. 2005) (quoting *Cone v. Bell*, 543 U.S. at 455). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis v. Mitchell*, 354 F.3d 511, 517-18 (6th Cir. 2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *cert. denied*,

128 S. Ct. 1897 (2008). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

### A.  Ground I:  Due Process - *Ex Parte* Order

Petitioner contends that his due process rights were violated when the amended order of probation was entered *ex parte*. The trial court concluded that "an amended order of probation which merely reduces a defendant's level of confinement and actually increases the scope of his liberty relative to confinement in a jail . . . does not result in a fundamental change to defendant's liberty interest which would trigger due process protections." (02/26/04 Muskegon County Circuit Court Op. and Ord., Ex. 4, 3, docket #8).

To state a due process claim, a petitioner must first establish that he has a liberty interest that is entitled to protection by the due process clause. After a prisoner has been released on probation, he has a constitutionally protected interest in remaining on probation. Accordingly, prior to the revocation of probation, due process mandates all of the procedural guarantees specified by the Supreme Court in *Morrissey v. Brewer*, 408 U.S. 477-88 (1972), with regard to probation revocation, including written notice of the claimed violation and a hearing on the matter. *See Black v. Romano,* 471 U.S. 606, 612 (1985); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). In the present case, before revoking his probation, the State provided Petitioner with notice and a full evidentiary hearing, with counsel present. Petitioner does not challenge the constitutional validity of his revocation process. Nor does he contend that he was unaware of the term included in the Order Amending the Order of Probation, which he was charged with violating. He claims only that

ordering his release from jail and his participation in the Touchstone program as an additional condition of probation without notice or a hearing violates due process.

Petitioner's argument suffers from two fundamental flaws. First, the order was not issued without notice or opportunity to be heard. Rather, Petitioner received a copy of the order and signed an agreement to abide by it. Under Michigan procedure, if Petitioner had not agreed to the proposed modification, the matter would have been taken up in court, where Petitioner could have raised his objections to being released from jail. As it was, Petitioner agreed to the modification, and no further process was required. Second, and more fundamentally, the modification cannot possibly be viewed as a deprivation of liberty. The order increased Petitioner's liberty by releasing him from jail in favor of a community setting. The state court was correct in concluding that the Due Process Clause does not require notice and an opportunity to be heard before a probationer's liberty is increased. The rule governing federal probation and supervised release expressly allows modification of probation orders without a hearing if "the relief sought is favorable to the person and does not extend the term of probation. . . ." FED. R. CRIM. P. 32.1(c)(2)(B). *See United States v. Giraldo-Prado*, 150 F.3d 1328, 1330 (11th Cir. 1998) (favorable modifications do not require a hearing). The same principle applies here.

The Supreme Court has never held that a modification of conditions of probation that releases a probationer from jail and therefore enhances his liberty must be accompanied by due-process guarantees. Petitioner's first claim therefore must be rejected.

### B.  Ground II:  Due Process - Invalid Order

Petitioner argues that the Order Amending the Order of Probation was invalid on October 4, 2002, when Petitioner was charged with violating his probation, because it was not entered on the court's record until October 9, 2002. The trial court rejected Petitioner's argument, finding that an order is effective and enforceable when it is entered, rather than at the time it is filed in the court records. (02/26/04 Muskegon County Circuit Court Op. & Ord., Ex. 4, 2, docket #8).

Petitioner's claim is based upon an interpretation of state law. A federal court, however, may only entertain a petition for habeas relief on behalf of a person in custody pursuant to the judgment of a State court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir 2008) (citing Floyd *v. Alexander,* 148 F.3d 615, 619 (6th Cir. 1998)). The Sixth Circuit has declared that "[f]or excellent reasons, claims that a state erred in interpreting or applying its own criminal law or procedural rules are almost always rejected as grounds for granting the writ of habeas corpus." *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001) (citation omitted). The court must accept as valid a state court's interpretation of the statutes and rules of practice of that state. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Ground II therefore fails to state a claim for habeas relief, as it arises solely under state law and no fundamental miscarriage of justice is alleged.

### C.    Ground III: Ineffective Assistance of Counsel

Petitioner claims that the attorney representing him at his probation revocation hearing rendered ineffective assistance of counsel by failing to inform Petitioner that the state had violated his due process rights. As a result, Petitioner entered a guilty plea, which he would not

have done if he had known his constitutional rights were being violated. The trial court rejected Petitioner's argument, reasoning that defense counsel is not required to raise meritless issues. (02/26/04 Muskegon County Circuit Court Op. and Ord., Ex. 4, 3, docket #8).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

The court having determined that Petitioner's due process rights were not violated by the trial court's entry of the Order Amending the Order of Probation, counsel's failure to advise

Petitioner to the contrary was clearly not objectively unreasonable. Therefore, the trial court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

## Certificate of Appealability

Before a petitioner may appeal a decision of this court, the court must determine if the petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); FED. R. APP. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

After conducting the required inquiry, and for the reasons stated above, the court finds that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. See 28 U.S.C. § 2253(c)(2). Because the court can discern no good faith basis for an appeal, *see Miller-El v. Cockrel*, 537 U.S. 322, 338 (2003), any appeal would be frivolous. The court, therefore, will deny a COA.

Dated: October 8, 2008          /s/ Paul L. Maloney
                                Paul L. Maloney
                                Chief United States District Judge